## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **DERRICK JUSTIN MITCHELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-00453-O-BP** |
| | § | |
| **TRANS PAPA LOGISTICS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Compel Arbitration (ECF No. 11) and Appendix in Support (ECF No. 12) that Defendants Trans Papa Logistics, Inc., P J Food Service, Inc., and Papa John's International, Inc. (collectively "Defendants") filed on August 6, 2025. On August 7, 2025, the Court reminded Plaintiff Derrick Mitchell ("Mitchell") to file a response on or before August 27, 2025. *See* ECF No. 14. He did not do so.

Based upon a full review of the relevant pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** Defendants' Motion to Compel Arbitration (ECF No. 11) and **STAY** the case pending completion of arbitration.

## I.    BACKGROUND

Mitchell brought this action against the Defendants alleging violations of Title I of the Americans with Disabilities Act ("ADA"). ECF No. 1. Mitchell claims that he has a qualified disability under the ADA as he suffers from paruresis. *Id.* at 8. He asserts that this condition qualifies as a disability under the ADA because it substantially limits a major life function. *Id.* He further claims that this disability prevented him from being able to participate in urine drug screens

at the screening test site that Defendants required for his employment. *Id.* at 10. He alleges that the Defendants discriminated against him because of the disability, failed to make reasonable accommodations in the form of an alternate form of drug testing, and then fired him as a result. *Id.* at 9.

In the pending Motion, Defendants contend that the case is subject to binding arbitration. ECF No. 11 at 2. They assert that Mitchell electronically signed an arbitration agreement prior to commencing his employment that is valid and covers his claims. *Id.* at 2-5. They allege that Mitchell agreed to and acknowledged the Defendants' "E-Signature Disclosures & Consent form" at the same time, which stated that electronic signatures were the equivalent of handwritten signatures and had the same binding effect. *Id.* at 2-3. The arbitration agreement provides in a paragraph that includes Mitchell's electronic signature the following language:

> You and Papa John's* (collectively, the "Parties") . . . recognize that differences may arise between the Parties that cannot be resolved without the assistance of an outside party. The Parties agree to resolve any and all claims, disputes or controversies arising out of or relating to your employment with Papa John's ("Covered Claims"), exclusively by final and binding arbitration to be administered by a neutral dispute resolution agency agreed upon by the Parties at the time of the dispute. This includes claims relating to, if applicable, termination from employment with Papa John's. You and Papa John's agree that this Arbitration Agreement (this "Agreement") shall be enforceable pursuant to and interpreted in accordance with the provisions of the Federal Arbitration Act ("FAA") and that the Parties are subject to the FAA. This Agreement is a binding contract between you and Papa John's, and, except as provided below, you and Papa John's voluntarily waive any right to a trial in court before a judge or jury on any claims between you and Papa John's.

ECF No. 12 at 7. The Defendants seek an order staying Mitchell's lawsuit and referring the case to arbitration. ECF No. 11 at 8.

## II.    ANALYSIS

### A.    A valid agreement to arbitrate between the parties exists under Texas law.

In deciding whether the parties agreed to arbitrate, the court must apply the contract law of the state that governs the agreement. *First Options v. Kaplan*, 514 U.S. 938 (1995). When parties have included a forum selection clause in the contract, the court follows the selection as it "is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004) (citing *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir.1995)) (explaining that although the contract in *Kelvin Services* did not contain an arbitration agreement, the same burden on the objecting party applies in the arbitration context).

Here, the arbitration agreement does not contain a choice of law provision. ECF No. 12 at 7-10. Defendants apply Texas law in their filings to argue that the agreement is valid. ECF No. 11 at 5. Mitchell did not object to the application of Texas law and did not argue that any other state law is applicable as he did not file a response. In the absence of a dispute between the parties over choice of law, the Court applies Texas law to determine the agreement's enforceability.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (collecting Texas cases). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotation marks and citations omitted).

Mitchell raises no such allegations here. He did not respond to the Defendants' Motion and has not offered any facts or arguments showing that the arbitration agreement was the product of fraud, coercion, or other grounds that would invalidate it. Accordingly, the Court should find that a valid agreement to arbitrate exists between the parties under Texas law.

**B.    Mitchell's claims are within the scope of the arbitration agreement.**

Having found that a valid agreement to arbitrate exists, the Court must next determine whether the present dispute is within the scope of the agreement. *Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.* at 418 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, (1986)). "[In] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.,* 475 U.S. at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584-85 (1960)).

Under the agreement at issue, claims "arising out of or relating to" Mitchell's employment including "termination" and alleged "discrimination or harassment on the basis of . . . disability" are subject to arbitration. ECF No. 12 at 7-8. Mitchell's claims fall squarely within the provisions of the agreement and must be submitted to binding arbitration.

**C.    The Court also should refer the case to arbitration because the agreement empowers the arbitrator to decide enforceability of the agreement.**

The Supreme Court has "held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (internal quotations omitted) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 130 (2010)). However, "[c]ourts should not

4

assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (citing *AT & T Techs.,* 475 U.S. at 649). And "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, the arbitration agreement states, "[t]he Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including any contention that this Agreement is void or unenforceable." ECF No. 12 at 9. This language provides clearly and unmistakably that the parties agreed to arbitrate arbitrability. Therefore, the arbitrator rather than this Court should resolve the question of the agreement's enforceability and applicability to Mitchell's claims. As a result, whether the Court or the arbitrator should decide the issue of arbitrability, referral for arbitration is warranted in this case.

### D.    The Court should stay the case pending conclusion of arbitration.

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Here, Defendants move to "sta[y] this lawsuit." ECF No. 11 at 8. Thus, the Court should stay the case pending resolution of the arbitration proceedings and order the Clerk to administratively close the case in the meantime.

## III.    CONCLUSION

Because Mitchell and Defendants agreed to arbitration for disputes such as the one at issue, or at a minimum agreed to submit the issue of arbitrability to an arbitrator, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** Defendants' Motion to Compel

Arbitration (ECF No. 11), **STAY** Mitchell's claims pending resolution of this dispute in binding arbitration, and **ORDER** Mitchell and the Defendants to file a Motion to Reopen the Case, if necessary, following conclusion of the arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

It is so **ORDERED** on October 1, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE